**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

QUENTIN La GRANDE,

                              Plaintiff

        - v -                                       1:03-CV-1453
                                                           (GLS/RFT)

ADECCO,

                              Defendant.
_____

**APPEARANCES:**                                             **OF COUNSEL:**

QUENTIN La GRANDE
Plaintiff, *Pro Se*
276 Sheridan Avenue
Albany, New York 12210

MCNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.      DAVID J. WUKITSCH, ESQ.
75 State Street
P.O. Box 459
Albany, New York 12201

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

### I. PROCEDURAL HISTORY

     This action was commenced by *pro se* Plaintiff Quentin La Grande[1] on December 5, 2003,

---

[1] Mr. La Grande is no stranger to *pro se* litigation. In this District, since 2000, Plaintiff has initiated eight civil lawsuits, each alleging some form of discriminatory practice on behalf of the Defendants whether it be race, gender, or even age discrimination. *See La Grande v. Key Bank Nat'l, et al.*, Civ. No. 1:00-cv-1195 (HGM/RFT) (race and gender discrimination) (lead case consolidated with *La Grande v. Leonard, et al.*, Civ. No. 5:00-cv-1300 (HGM/RFT) as the member case); *La Grande v. Bestemp Select, Inc., et al.*, Civ. No. 1:03-cv-1276 (LEK/RFT) (race discrimination); *La Grande v. Adecco*, Civ. No. 1:03-cv-1453 (within case); *La Grande v. Empire Blue Cross and Blue Shield, et al.*, Civ. No. 1:04-cv-373 (NAM/RFT) (age discrimination); *La Grande v. Anderson, et al.*, Civ. No. 1:04-cv-1020 (GLS/RFT) (race discrimination); *La Grande v. DeCresente Distributing Co., Inc.*, Civ. No. 1:06-cv-467 (FJS/DRH) (race discrimination); *La Grande v. DeCrescente Distributing Co., Inc.*, Civ. No. 1:06-cv-469 (FJS/DRH) (race discrimination).

against Adecco USA, Inc.,[2] alleging discriminatory practices by the Defendant in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991.  Dkt. No. 1, Compl. Specifically, Plaintiff alleges that Defendant, a Temp Agency, sent him on a job assignment where he was met with inappropriate questions from the supervisor and was given negative feedback from the supervisor at this particular assignment.  After complaining to Defendant, Plaintiff claims he was no longer given "high-paying" office work assignments and, on April 4, 2003, he received a letter notifying him that he was terminated and the matter was closed.  Plaintiff then commenced this action alleging he was discriminated against by Defendant.

The initial conference was set for March 18, 2004, before this Court and the Civil Case Management Plan was due on March 3, 2004.  Dkt. No. 4.  At the Rule 16 Conference, *inter alia*, dates certain were set for Joinder of Parties (6/30/2004), Amendment of Pleadings (6/30/2004), Mediation (7/15/04), Discovery (12/30/2004), and Motions (3/30/05).  Dkt. No. 7.  Despite the conspicuous statement in the Uniform Pretrial Scheduling Order (hereinafter "UPSO") that the "**DEADLINES SET FORTH . . . ARE FIRM AND WILL NOT BE EXTENDED, EVEN BY STIPULATION OF THE PARTIES, ABSENT GOOD CAUSE[,]**" such has apparently been systematically ignored by Plaintiff.  Dkt. No. 7 at p. 1 (emphasis in original); *see also* FED. R. CIV. P. 16(b).

Only two months after the Rule 16 Conference, the first problem with Plaintiff set in motion what would be a pattern of non-compliance with Court Orders.  Within the UPSO, the Court designated this action for Mandatory Alternate Dispute Resolution ("ADR").  Dkt. No. 7 at pp. 9-10. Accordingly, the parties were directed to select, within ten (10) days from the issuance of the

---

[2] Plaintiff incorrectly designated Defendant as "Adecco" in his Complaint.

Order, a neutral of their choice from a list of court approved neutrals; such list was readily available to both parties on this District's website. *Id*. at p. 9; *see also* http://www.nynd.uscourts.gov/adr.htm. The Court's ADR Administrator sent a "Notice of Deadline to Select Neutral" to the parties notifying them that they were "late in selecting a neutral." Dkt. No. 13. This late notice notification extended the date for another ten (10) days from the date it was sent to the parties. *Id*. It also stated that should the parties fail to select a neutral, the Court would appoint a neutral for them. *Id*. Shortly thereafter, Defendant moved to have the Court appoint a neutral as communications between Plaintiff and Defendant's Counsel proved unfruitful. Dkt. No. 14. Then, on May 21, 2004, a Text Order was issued by this Court whereupon it was noted that Plaintiff failed to disclose his mandatory discovery pursuant to Rule 26.[3] Text Order, dated May 21, 2004. Plaintiff agreed that he would share the required information on or before May 28, 2004, and he was duly informed by this Court that if he "fail[ed] to comply with discovery, he may be SUBJECT TO SANCTIONS, WHICH COULD INCLUDE DISMISSAL OF HIS LAWSUIT." *Id*. (emphasis in original).

The ADR Deadline, which was originally scheduled to conclude on July 15, 2004, Dkt. No. 7, was extended, at Defendant's request, to August 15, 2004, in order to accommodate the mediator's schedule, Dkt. No. 17. However, on August 2, 2004, Defendant's Counsel again requested an extension of such deadline, this time due to delays associated with Plaintiff's efforts to find legal representation. Dkt. No. 18. The Court, once again, extended the ADR Deadline to

---

[3] Federal Rule of Civil Procedure 26 gives a laundry list of things that a party must provide to opposing parties without awaiting a discovery request. These disclosures must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) objection.

October 15, 2004, and noted that this would be the final extension. Dkt. No. 22. In addition, the Court noted that "[t]he Plaintiff **must** participate in the Mediation even if he does not have an attorney. Plaintiff's **failure to participate in the Mediation may lead to Sanctions, which could include Dismissal of his lawsuit**." *Id*. (emphasis added). Ultimately, ADR was unsuccessful. Dkt. No. 25.

Shortly after completion of ADR, the Court received another letter from Defendant's Counsel, dated April 18, 2005, seeking "a discovery conference and for permission to file a motion to compel disclosure" because of Plaintiff's failure to respond to Defendant's written discovery requests and Plaintiff's failure to appear for his deposition on April 15, 2005. Dkt. No. 27. Defendant's Counsel explained that the request for Plaintiff's written discovery was sent on February 9, 2005, and a notice of deposition was sent on February 28, 2005, with a scheduled deposition date of April 15, 2005.[4] *Id*. Furthermore, Plaintiff's failure to appear for the scheduled deposition caused the Defendant to incur unnecessary expenses, which could have been prevented had Plaintiff notified them in a timely fashion that he would not be able to attend the scheduled deposition. Because this Court previously warned Plaintiff of the consequences of his failure to comply with discovery, this Court granted Defendant's request to file a motion to compel. Dkt. No. 28. Plaintiff was warned that his failure to oppose "Defendant's motion could result in dismissal of his action in which there will be no trial." *Id*. at p. 2. At this point in the litigation, had Plaintiff not delayed this litigation through his uncooperative behavior, in accordance with the original Scheduling Order, this case would have been deemed trial ready. Since, however, a decision on the Defendant's Motion could potentially dispose of the litigation, this Court removed the case from the

---

[4] Both the written discovery requests and the notice of deposition were sent to Plaintiff's record address via United States Postal Service and were neither returned to the post office nor to the sender.

*-4-*

trial ready list.[5]

On May 13, 2005, Defendant filed its Motion seeking sanctions against Plaintiff in the form of dismissal of the action due to Plaintiff's failure to comply with prior Court Orders to provide discovery responses. Dkt. No. 31. Defendant sought in the alternative, should this Court find dismissal too severe, to impose sanctions against Plaintiff, to compel Plaintiff to provide outstanding discovery responses, and any other relief the Court may deem appropriate. *Id*. Plaintiff's response to the Motion was due on June 6, 2005. *Id*. On June 3, 2005, the Court received a "status report" from Plaintiff wherein he professed that he has "provided the defendant Adecco and its counsel with all of the mandatory disclosures and in responding to discovery." Dkt. No. 32. However, Plaintiff did not provide any evidence to substantiate such contention nor did Plaintiff state the reason why he failed to appear at the scheduled deposition which caused Defendant to incur an unnecessary expense. *Id*.

On July 13, 2005, this Court ruled on Defendant's Motion and held that dismissal "[was] not warranted when there are other remedies that can be exercised[.]" Dkt. No. 33 at p. 8. Instead, the Court imposed monetary sanctions directing Plaintiff to reimburse the Defendant $325 for deposition costs they incurred with further direction that Plaintiff comply with discovery and participate in another deposition. *Id*. Specifically, the Court directed Plaintiff to respond to Defendant's Demand for Interrogatories and Production of Documents on or before August 18, 2005. We further directed Plaintiff to appear at a deposition on or before August 30, 2005. Dkt. No. 33 at p. 8. As to the monetary sanction, this Court established a payment schedule whereupon Plaintiff would pay the sum of $325 to the Law Firm of McNamee, Lochner, Titus & Williams,

---

[5] Defendant's request for an extension of pre-trial deadlines was denied. Dkt. No. 30.

P.C., in two installments, the first installment of $175 was due on or before September 15, 2005, and the remaining $150 was due on or before December 15, 2005. *Id.* Finally, the UPSO was amended whereupon the Discovery Deadline was extended to September 30, 2005, and the Motion Filing Deadline was extended to October 30, 2005. *Id.* Most importantly, the Court again warned Plaintiff that "**FAILURE TO COMPLY WITH THIS ORDER SHALL LEAD TO SANCTIONS WHICH MAY INCLUDE A DISMISSAL OF THE PLAINTIFF'S LAWSUIT**." *Id.*

On August 24, 2005, instead of complying with this Court's Order, Plaintiff filed an appeal to the District Judge, purportedly in accordance with Local Rule 72.1(b). Dkt. No. 34. Though filed untimely, the District Court accepted Plaintiff's appeal and set a briefing schedule. Dkt. No. 36. Defendant opposed Plaintiff's appeal. Dkt. Nos. 40-42. On January 27, 2006, the District Judge denied Plaintiff's appeal, thereby upholding this Court's rulings and sanctions. Dkt. No. 56. Plaintiff then appealed such decision to the Second Circuit, Dkt. No. 59, who *sua sponte* determined it lacked jurisdiction over Plaintiff's appeals as a final order has not been issued by the District Court. Dkt. No. 63. Thus, Plaintiff's appeals were dismissed.[6] *Id.*

Prior to the District Court's issuance of a decision on Plaintiff's appeal, Defendant sought permission to renew its motion to compel discovery and sanctions against Plaintiff for his failure to comply with the July 13, 2005 Order. Dkt. No. 43. Defendant claimed that as of October 4, 2005, the date of the letter request, Plaintiff had failed to comply with **any** of the requirements in said Order. *Id.* By Text Order, dated October 4, 2005, this Court granted Defendant's request. The

---

[6] In addition to appealing the District Judge's Decision, Plaintiff filed other appeals to the Second Circuit, including an appeal from a Document Rejection Order, Dkt. Nos. 47 and 48, and a Text Order, dated October 14, 2005, allowing Defendant to file a renewed motion for sanctions, Dkt. No. 49. Apparently Plaintiff's appeals were considered together and summarily dismissed for lack of jurisdiction.

Second Motion for Sanctions was filed by Defendant on October 13, 2005, wherein Defendant sought dismissal of the pending action due to Plaintiff's repeated failure to comply with prior Court Orders. Dkt. Nos. 44 & 45. A response to such Motion was due on October 31, 2005. On November 23, 2005, Plaintiff requested an adjournment and emergency stay of the action, requesting that the Court grant him a sixty (60) day adjournment because he was in the process of retaining counsel and needed more time to pay counsel a balance of $100 for reviewing his case. Dkt. No. 53. A Text Order was issued on November 23, 2005, wherein this Court granted in part and denied in part Plaintiff's request. The Court granted a stay until January 13, 2006,[7] upon the condition that Plaintiff file a status report detailing his efforts to retain an attorney on or before said date. Dkt. No. 54.

Not surprisingly, on January 17, 2006, after the deadline set by this Court had expired, Plaintiff attempted to file a Motion to Continue the Stay for an additional thirty (30) days. Such Motion, however, was rejected due to Plaintiff's failure to indicate, per Local Rule 4.1(a), that his opponents were duly served with said Motion. Dkt. No. 55. Plaintiff was further informed that the Stay imposed on November 23, 2005, was lifted on January 13, 2006, by operation of the expiration of the deadline set in that Order. Since Plaintiff's request to extend the Stay was dated January 17, 2006, it was untimely. The Court indicated it was not prepared to re-instate the Stay and gave Plaintiff until February 2, 2006 to respond to Defendant's pending Motion. On January 25, 2006, Plaintiff again sought to renew his Motion to continue the Stay. Dkt. No. 58. Such Motion was denied. Dkt. No. 62. The Court never received a response from Plaintiff to Defendant's renewed Motion for Sanctions. On April 25, 2006, as this Report-Recommendation was being drafted, the

---

[7] The Text Order, dated November 23, 2005, mistakenly set a status report date of January 13, 2005, when clearly 2006 was contemplated.

Court received a Motion for an Emergency Stay, wherein Plaintiff once again sought a sixty-day adjournment in order to retain Karen Kimball as an attorney. Dkt. No. 64. Ms. Kimball has never made an appearance in this case despite Plaintiff's claims of intent to retain her. As explained more fully below, this Court **denies** Plaintiff's belated request for a Stay and further recommends **granting** Defendant's Motion and dismissing this entire action.

## II.  APPLICABLE LAW

### A.  Authority Granted Pursuant to the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 37(c)(1) provides that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

In addition, as set forth in Federal Rule of Civil Procedure 37(b)(2), a court may consider imposing the following as sanctions:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or **dismissing the action** or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . . .

(emphasis added).

The purpose of a Rule 37 sanction is to: (1) ensure that the noncomplying party is not able to reap the benefits from his noncompliance; (2) serve as a deterrent; and (3) seek compliance with

court imposed orders. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). The degree of sanctions that the court can impose on a non-complying party ranges from the mildest, such as ordering the party to reimburse for expenses incurred due to his/her non-compliance, or the harshest order, such as ordering dismissal or default. *Id.*; *see also Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 2004).

Courts are given broad discretion in imposing Rule 37 sanctions. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citing *Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir.1999)); *see also Valentine v. Museum of Modern Art*, 29 F.3d at 49. However, before imposing sanctions, the court **may** consider: (1) the history of the party's failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned and given an opportunity to argue the impending sanctions; (5) the prejudice to the adversary caused by failure to comply; (6) whether the document at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. *Bambu Sales Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-54 (2d Cir. 1995); *Momah v. Messina Mem'l. Hosp. & Bond*, 1998 WL 129045, at *5 (N.D.N.Y. Mar. 6, 1998).

As the imposition of sanctions is a drastic remedy, it should be considered in cases where it has been established that the non-complying party's failure to comply was wilful, done in bad faith or a callous disregard of the responsibilities set forth in the Federal Rules of Civil Procedure or a court order. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 639-40 (1976) (citing *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)); *State of New York v. Almy Brothers, Inc.*, 1998 WL 57666, at *9 (N.D.N.Y. Feb. 4, 1998); *Hinton v. Patnaude*, 162 F.R.D 435, 439

(N.D.N.Y. 1995) (flagrant bad faith). Furthermore, gross negligence and in some instances, ordinary negligence may suffice to show wilful and flagrant bad faith. *Cine Forty-Second Street Theatre Corp.*, 602 F.2d at 1066-68 (deliberate tactical intransigence and/or gross negligence); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d. Cir. 2002) (ordinary negligence); *Burks v. Eagan Real Estate Inc.*, 742 F. Supp. 49, 51-52 (N.D.N.Y. 1990) (drastic remedy or a default judgment should not be considered unless the failure to comply was the result of bad faith or gross negligence).

In order for a court to find that a party acted wilfully, the order of the court must be clear, there must be no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance. *Bambu Sales*, 58 F.3d at 852-53. A "party's persistent refusal to comply with a discovery order presents sufficient evidence of wilfulness, bad faith or fault." *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (quoting *Monoghan v. SZS 33 Assoc., L.P.*, 148 F.R.D. 500, 509 (S.D.N.Y. 1993) (noting that "unexcused failure to comply with two discovery orders warranted dismissal")). However, this statute permits either substantial justification or harmlessness to blunt the impact of sanctions. *Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y. 1999) (citing *Hinton v. Patnaude*, 162 F.R.D. at 439)).

Substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Jockey Int'l, Inc. v. M/V "Leverkusen Express*," 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002) (quoting *Henrietta D. v. Giuliani*, 2001 WL 1602114 at *5 (E.D.N.Y. Dec. 11, 2001)). There is no exception to honoring and respecting discovery orders. All litigants and

litigators, including *pro se*, must comply and when they flout their obligation, they must suffer the consequences of such action. *Baker v. Ace Advertisers' Serv. Inc.*, 153 F.R.D. 38, 40 (S.D.N.Y. 1992) (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)); *see also Valentine v. Museum of Modern Art*, 29 F.3d at 50 (imposing sanctions on *pro se* plaintiff); *Scott v. Town of Cicero Police Dep't*, 1999 WL 102750 (N.D.N.Y. Feb. 24, 1999) (providing *pro se* plaintiff an additional opportunity to be heard before imposing sanctions). Furthermore, "disclosure of evidence [is meant to] proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredline*, 951 F.2d 1357, 1365 (2d Cir. 1991) (citation omitted). "When a party seeks to frustrate this design by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Id.* at 1365 (citing *Nat'l Hockey League*, 427 U.S. at 643).

### B. Inherent Authority

Furthermore, courts may turn to their inherent powers, which are innate to its creation, to impose respect for its lawful mandates. *United States v. Seltzer*, 227 F.3d 36, 39-42 (2d Cir. 2000); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998). Federal courts have always had the inherent power to manage their own proceedings and to control the conduct of those who may appear before them, and when a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons," the courts may exercise their discretion in fashioning a remedy. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991) (citations omitted). Even in the absence of a discovery order, a court may impose sanctions for misconduct during discovery through this inherent power to manage its affairs. *Residential Funding Corp.*, 306 F.3d at 106-07.

However, before a court can exercise this enormous power, it should do so with restraint and upon the finding of bad faith and where abuse litigation practices are evident. *DLC Mgmt. Corp.*, 163 F.3d at 136; *see also Sanders v. City of New York*, 218 F. Supp. 2d 538, 542-43 (S.D.N.Y. 2002) (citing *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) for the proposition that when a court exercises its inherent power to impose sanctions for the discovery abuse of spoilation, neither bad faith nor intentional misconduct is necessary).

### III. ANALYSIS

Plaintiff commenced this action against Defendant over two years ago. Due to Plaintiff's blatant disregard of the judicial process, this Court is faced with another Motion to Compel and/or Sanctions against Plaintiff for his failure to comply with discovery and numerous Court Orders. For the reasons set forth below, the facts of this case requires a stringent penalty and it is **recommended** that Plaintiff's cause of action against Defendant be **dismissed with prejudice**.

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, a court may dismiss an action, on motion or on its own initiative, for the "failure of the plaintiff to prosecute or to comply with [the Federal Rules of Civil Procedure] or any order of court [.]" FED. R. CIV. P. 41(b). Rule 37 of the Federal Rules of Civil Procedure also authorizes dismissal of an action due to a party's failure to comply with discovery and/or court orders. *See also* N.D.N.Y.L.R. 1.1(d) & 7.1(d). Given the harsh nature of dismissals, such dismissals are "appropriate only in extreme circumstances." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Furthermore, a court must be cognizant of the special latitude to be given to *pro se* litigants. *Webb v. Bermudez*, 1996 WL 599673, at *1 (S.D.N.Y. Oct. 17, 1996) (citing *Salahuddin v. Harris*, 782 F.2d at 1132). However, just because La Grande is proceeding *pro se* does not mean that he can thwart the judicial process

as he chooses.  This Circuit has held that "while *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses*, have an obligation to comply with court orders.  When they flout that obligation they, like all litigants, must suffer the consequences of their actions."  *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988).  On numerous occasions, this Court has informed Plaintiff that his failure to comply with Court Orders may subject him to sanctions, which could include dismissal of his lawsuit.  *See* Text Order, dated May 21, 2004; Dkt. Nos. 22, 28 & 33.  This Court notified Plaintiff, on May 21, 2004, that he was late in submitting the required disclosures as set forth in Federal Rule of Civil Procedure 26 and Plaintiff agreed that the required material would be submitted on or before May 28, 2004.  Almost one year after the May 21, 2004 Text Order was issued, Defendant requested permission to file a motion to compel disclosure and/or impose sanctions because Plaintiff failed to respond to Defendant's written discovery and failed to appear at a scheduled deposition.  Dkt. No. 27.  At no time has Plaintiff indicated or provided any evidence detailing (1) that he complied with discovery requirements; (2) the reason why he was not able to attend his deposition; and/or (3) that he never received the requested materials and the notice of deposition from Defendant.  Plaintiff has not provided any substantial justification whatsoever as to his failure to respond to the discovery request nor for his failure to attend the scheduled deposition.

As indicated above, substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."  *Jockey Int'l, Inc. v. M/V "Leverkusen Express*," 217 F. Supp. 2d at 452 (quoting *Henrietta D. v. Giuliani*, 2001 WL 1602114, at \*5).  If Plaintiff had contacted Defendant and proffered a valid reason for not responding to the discovery request or

circumstances that prevented him from attending the scheduled deposition, the parties could potentially have come to an agreement. However, instead of trying to resolve the matter without court intervention, as required by the Local Rules, Plaintiff chose to disregard both mailings that were sent to his record address, and likewise ignore several Court Orders directing that he comply with his obligations in the discovery phase of this litigation. Because of Plaintiff's failure to provide this Court or Defendant with substantial justification as to why the written discovery went unanswered and why he failed to attend the scheduled disposition, Defendant instituted their first Motion to Compel/Sanctions, which this Court granted in part and provided directives; Plaintiff patently ignored these directives.

The degree of sanctions that the court may impose on a non-complying party ranges from the mildest, such as ordering the party to reimburse for expenses incurred due to non-compliance, or the harshest order, such as ordering dismissal or default. *Cine Forty-Second Street Theatre Corp.*, 602 F.2d at 1066; *see also Valentine v. Museum of Modern Art*, 29 F.3d at 49. In ruling on Defendant's First Motion for Sanctions, and keenly aware of the drastic nature of dismissal as a sanction, this Court chose to impose monetary sanctions against Plaintiff for the expense Defendant incurred in connection with the deposition Plaintiff failed to attend. We further compelled Plaintiff to respond to outstanding discovery requests and to participate in another deposition. Time and time again, this Court warned Plaintiff of the consequences of his failure to comply, which could include dismissal of the lawsuit; not surprisingly, such admonitions have clearly fallen on deaf ears. Dkt. No. 33.

The Court's intention in previously imposing a less severe sanction was to impose upon Plaintiff the notion that his actions in not following this Court's Orders and the Rules of Civil

Procedure had consequences. We further hoped that Plaintiff would be more cooperative in the judicial process. Obviously, such was nothing more than a hopeless effort. Plaintiff again chose to ignore this Court's Order and filed an appeal. However, filing an appeal does not automatically give a party the right not to obey with a Court Order. As stated in *Maness v. Meyers*, Orders issued by a court **must** be obeyed, even if it is later shown to be erroneous. 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, **absent a stay**, he **must** comply promptly with the order pending appeal." (emphasis added)). Therefore, Plaintiff was required to comply with this Court's Order pending a decision on his appeal, which he did not.

In light of Plaintiff's incessant non-compliance, Defendant requested this Court's permission to file yet another Rule 37 Motion. Dkt. No. 43. Defendant has tried every conceivable avenue to have Plaintiff comply with this Court's Orders so that the action instituted by Plaintiff could expeditiously move forward. Plaintiff's "wilful, obstinate refusal to play by the basic rules of the system upon whose very power [he] is calling [on] to vindicate his rights" cannot be tolerated any longer. *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d at 124 (quoting *McDonald v. Head Criminal Court Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987)).

Plaintiff has tied up the Court's resources with his callous disregard for this Court's Orders and the Court's Rules for more than two years and it is not unreasonable to conclude that due to his behavior, Defendant has been prejudiced substantially. Prejudice against a party may be presumed from the amount of delay. *See United States ex rel. Drake v. Norden Sys.*, Inc., 375 F.3d 248, 255 (2d Cir. 2004); *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42-43 (2d Cir. 1982). While *pro se* litigants are given special latitude, this is not a reason for non-compliance with specific and

numerous Court Orders.  Furthermore, "disclosure of evidence [is meant to] proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention."  *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredline*, 951 F.2d 1357, 1365 (2d Cir. 1991).  "When a party seeks to frustrate this design by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate."  *Id*. at 1365 (citing *Nat'l Hockey League*, 427 U.S. at 643).

This Court has been more than accommodating and patient with Plaintiff when, for example, Plaintiff requested an Emergency Stay for sixty (60) days in order to obtain Mrs. K. Kimball as his attorney and to give her time to prepare so she can adequately represent him.  Dkt. No. 53.  The Emergency Stay was granted in part and denied in part.  The condition on which this Stay was extended was based upon Plaintiff filing a status report detailing his efforts to retain an attorney on or before January 13, 2005.  Dkt. No. 54, Text Order, dated Nov. 23, 2005.  Again, Plaintiff failed to file any status report indicating his efforts to obtain an attorney as part of the condition for the Stay being granted.

In order for a court to find that a party acted wilfully, the order of the court must be clear and there is no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance.  *Bambu Sales*, 58 F.3d at 852-53.  A "party's persistent refusal to comply with a discovery order' presents sufficient evidence of wilfulness, bad faith or fault."  *Handwerker v. AT&T Corp*., 211 F.R.D. at 209 (quoting *Monoghan v. SZS 33 Assoc., L.P.*, 148 F.R.D. at 509 (noting that "unexcused failure to comply with two discovery orders warranted dismissal")).  Plaintiff's willful disregard of Court Orders is evident.  Plaintiff has continuously ignored this Court's previous sanctions and admonitions and, therefore, at

this stage, we find the notion of giving him more warnings to be a waste of judicial time as it would provide to be unfruitful as it has been for the past two years. Ineluctably, this Court has repeatedly extended special latitude to this *pro se* litigant, all for naught. Attempts to use Rule 37 as either a deterrent or to promote compliance has been equally unavailing. Thus, based on the totality of the circumstances and discussions of the factors set forth, we believe that **dismissal** is warranted in this action. In light of this recommendation and the facts set forth above, we deny Plaintiff's belated request for yet another Stay. Dkt. No. 64

### IV. CONCLUSION

**WHEREFORE,** it is hereby

**ORDERED**, that Plaintiff's Request for an Emergency Stay (Dkt. No. 64) is **denied**; and it is further

**RECOMMENDED,** that Defendant's Motion to Dismiss (Dkt. No. 44) be **granted** and, in accordance with FED. R. CIV. P. 37 (b)(2)(C), this entire action be **dismissed**; and it is further;

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); Fed. R. Ci. P. 72(b), 6(a) & 6(e).

Date:  May 10, 2006
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge